# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Katherine Ann Sapp, | Civil No. 14-4698 (DWF/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of Brooklyn Park; Chisago County; City of Chisago City; City of Forest Lake; City of Hastings; Hennepin County; Isanti County; City of Isanti; Lakes Area Police Department; City of Maplewood; Mille Lacs County; City of Plymouth; City of Rice; Washington County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-200), acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30), acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; and Entity Does (1-50), including cities, counties, municipalities, and other entities sited in Minnesota, | |
| Defendants. | |

---

Jeffrey M. Montpetit, Esq., Susan M. Holden, Esq., and Marcia K. Miller, Esq., SiebenCarey; and Lorenz F. Fett, Jr., Esq., Sonia L. Miller-Van Oort, Esq., and Jonathan A. Strauss, Esq., Sapientia Law Group PLLC, counsel for Plaintiff.

Jon K. Iverson, Esq., Stephanie A. Angolkar, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, counsel for Defendants City of Brooklyn Park, City of Forest Lake, City of Hastings, Lakes Area Police Department, City of Maplewood, City of Plymouth, City of Rice, City of Chisago City, and City of Isanti.

Erin E. Benson, Esq., Margaret A. Skelton, Esq., and Timothy A. Sullivan, Esq., Ratwik, Roszak & Maloney, PA, counsel for Defendants Chisago County, Isanti County, Mille Lacs County, Washington County,

Beth A. Stack, Daniel D. Kaczor, Toni A. Beitz, Assistant Hennepin County Attorneys, Hennepin County Attorney's Office, counsel for Defendants Hennepin County, John and Jane Does (1-200).

Oliver J. Larson, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants Michael Campion and Ramona Dohman.

---

## INTRODUCTION

This matter is before the Court on the following motions:  (1) Motion to Dismiss and/or to Sever brought by Hennepin County (Doc. No. 15); (2) Motion to Dismiss, Motion to Sever brought by City of Brooklyn Park, City of Chisago City, City of Forest Lake, City of Hastings, City of Isanti, City of Maplewood, City of Plymouth, City of Rice, and Lakes Area Police Department (together, "City and Police Defendants") (Doc. No. 21); (3) Motion to Dismiss, Motion to Sever brought by Chisago County, Isanti County, Mille Lacs County, and Washington County (together, "County Defendants") (Doc. No. 28); and (4) Motion to Dismiss by Michael Campion and Ramona Dohman ("Commissioner Defendants") (Doc. No. 36).  For the reasons set forth below, the Court grants all four motions.

# BACKGROUND

This case relates to the alleged unlawful access of Plaintiff Katherine Anne Sapp's ("Sapp" or "Plaintiff") information that is contained in the Department of Vehicle Services' ("DVS")[1] motor-vehicle records database for Minnesota Drivers (the "Database"). (*See generally* Doc. No. 1, Compl.)  Plaintiff alleges that personnel from various government entities accessed her information contained in the Database without a lawful purpose. (*See generally id.*)  Plaintiff alleges that the Database includes individuals' "names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota." (*Id.* ¶ 60.)  Many of the allegations in this case are identical to the allegations made in the numerous and substantially similar cases previously filed in this District[2] and are very familiar to the Court. *See, e.g.*, *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1049-51, 1064-68 (DWF/LIB) (D. Minn. 2014) (describing plaintiff's allegations relating to the actions by the various government entities and the Commissioner defendants, and also describing the background and framework of the Driver's Privacy Protection Act ("DPPA")).

---

[1]     DVS is a division of the Minnesota Department of Public Safety ("DPS"). (Compl. ¶ 250.)

[2]     *See, e.g.*, *Sherno v. Anoka Cnty.*, Civ. No. 14-982, 2014 WL 4670926, at *1 (D. Minn. Sept. 19, 2014) (citing *Roschen v. Wabasha Cnty.*, Civ. No. 13-2490, 2014 WL 3105032, at *2 n.4 (D. Minn. June 26, 2014) (counting twenty-eight such cases in this District as of June 2014)).

Therefore, here, the Court need not restate all of Plaintiff's allegations, and instead, will focus on alleged facts that are unique to this case.

Plaintiff alleges that she worked as a 911-dispatcher for Washington County between 1997 and 2001.  (Compl. ¶ 36.)  Plaintiff lives in North Branch, Minnesota, where she has lived since 2001.  (*Id.* ¶ 58.)  Since 2001, she has been married to Richard Sapp ("Mr. Sapp").  (*Id.* ¶¶ 37, 38.)  Mr. Sapp has a number of ties to St. Paul, where his father was Chief of Police.  (*Id.* ¶¶ 39, 40.)  Mr. Sapp has been a police officer since 1997 and has worked for the Minnesota State Fair Grounds and Rush City as a part of the North Branch Police Department.  (*Id.* ¶¶ 41, 42.)

Plaintiff alleges that Mr. Sapp dated Jennifer Rivard ("Rivard") between 1992 and 1997 and that Mr. Sapp and Rivard lived together between 1995 and 1997 when they broke up and lost contact for a number of years.  (*Id.* ¶¶ 43, 44, 45.)  Plaintiff alleges that Mr. Sapp called the Brooklyn Park Police Department in the "mid-2000's" and Rivard answered the call and they engaged in "small talk."  (*Id.* ¶ 46.)  Plaintiff alleges that when she and Mr. Sapp received audits of their DVS records, they saw that someone had repeatedly obtained their driver's license information around the time of Mr. Sapp's call to the Brooklyn Park Police Department.  (*Id.* ¶ 47.)  Plaintiff and Mr. Sapp believed it was Rivard who had obtained their information.[3]  (*Id.*)  Plaintiff alleges she has never met Rivard.  (*Id.* ¶ 48.)  Plaintiff alleges that she and her husband talked with a Lieutenant with the Brooklyn Park Police Department about the accesses and he confirmed that

---

[3]     There were fourteen lookups of Plaintiff and twenty-one lookups of Mr. Sapp.

Rivard had looked them up in Brooklyn Park.  (*Id.* ¶¶ 49, 50.)  Plaintiff alleges she and

Mr. Sapp were concerned Rivard looked up their home address to stalk them.  (*Id.* ¶ 52.)

Plaintiff further alleges that on May 15, 2009, the Minneapolis Star Tribune

published an article about her and her siblings, one of whom is married to a Minneapolis

police officer.  (*Id.* ¶¶ 53, 54.)  Plaintiff alleges her DVS audit shows she was looked up

by the Minnesota Department of Natural Resources ("DNR") the day after the article

appeared and that a letter from the DNR confirmed that the lookup was not for an official

purpose.  (*Id.* ¶¶ 55, 56.)

Plaintiff sought an audit of the lookups associated with her information in the

DVS database, which she received on January 29, 2013.  (*Id.* ¶¶ 249-251.)  Plaintiff

alleges that her name, not her driver's license number or license plate number, were

accessed nearly sixty times since 2003.  (*Id.* ¶¶ 252, 253.)  Plaintiff alleges that there

were a number of simultaneous accesses of her information and Mr. Sapp's information.

(*Id.* ¶¶ 147, 148.)  Plaintiff alleges that she was looked up numerous times at odd hours of

the day.  (*Id.* ¶¶ 149-162.)  Plaintiff further alleges that she had never been driving late or

otherwise out in a number of cities where lookups occurred at night.  (*Id.* ¶¶ 151-163.)

Plaintiff repeatedly alleges she has never been charged with a crime or sought police

assistance, except for one traffic ticket ten years ago.  (*See, e.g., id.* ¶¶ 168, 255-56, 264.)

In her Complaint, Plaintiff asserts only one claim:  Violation of the DPPA,

18 U.S.C. § 2721, *et seq.*  (*Id.* ¶¶ 351-373.)  She seeks liquidated, actual and

compensatory damages, punitive damages, and injunctive relief.  (*Id.* at Jury Demand

¶¶ 1-6.)

5

Defendants now move to dismiss the case based primarily on the statute of limitations and for failure to state a claim.  (*See* Doc. Nos. 18, 24, 31, 37.)

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

6

reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550

U.S. at 556.

## II.   Statute of Limitations

The issues raised by the parties in the present motions have been extensively

discussed in connection with other DPPA cases in this District and need not be repeated

here.  With respect to the question of the applicable statute of limitations in DPPA cases,

the Court hereby adopts its prior reasoning in *Mallak*.  *See Mallak*, 9 F. Supp. 3d

at 1052-55.  Therefore, the Court finds that with respect to Plaintiff's DPPA claims, the

standard rule applies, and the Court declines to apply the discovery rule as sought by

Plaintiff.[4]  *Id.*  Application of the standard rule means that Plaintiff's DPPA claims are

---

[4]      As Defendants note, Courts in this district have repeatedly held that the standard
rule applies to DPPA claims and therefore all claims relating to conduct occurring more
than four years before an action was commenced are time-barred.  District of Minnesota
cases holding that the standard rule applies and that claims are subject to a four-year
statute of limitations include, but are not limited to, the following: *Rasmusson v. Chisago
Cnty.*, 991 F. Supp. 2d 1065, 1079-1082 (D. Minn. 2014); *Potocnik v. Carlson*,
9 F. Supp. 3d 981, 992-996 (D. Minn. 2014); *Mitchell v. Aitkin County*,
Civ. No. 13-2167, 2014 WL 835129, at *4 (D. Minn. March 4, 2014); *Bass v. Anoka
Cnty.*, 998 F. Supp. 2d 813, 819-820 (D. Minn. 2014); *McDonough v. Al's Auto Sales,
Inc.*, Civ. No. 13-1889, 2014 WL 683998, at *2 (D. Minn. Feb. 21, 2014); *Ray v. Anoka
Cnty.*, 24 F. Supp. 3d 843, 847-48 (D. Minn. 2014); *Roschen v. Wabasha Cnty.*, 29 F.
Supp. 3d 1244, 1250-51 (D. Minn. 2014); *Shambour v. Carver Cnty.*, Civ. No. 14-566,
2014 WL 3908334, at *4-5 (D. Minn. Aug. 11, 2014); *Tichich v. City of Bloomington*,
Civ. No. 14-298, 2014 WL 3928530, at *2 (D. Minn. Aug. 12, 2014); *Kendall v. Anoka
Cnty.*, Civ. No. 14-247, 2014 WL 3955265, at *2 (D. Minn. Aug. 13, 2014); *Smythe v.
City of Onamia*, Civ. No. 12-3149, 2014 WL 4096966, at *2-4 (D. Minn. Aug. 19, 2014);
*Porter v. City of Brooklyn Park*, Civ. No. 14-253, 2014 WL 4248445, at *1 (D. Minn.
Aug. 27, 2014); *Barghini v. Anoka Cnty.*, Civ. No. 14-297, 2014 WL 4273296, at *1 (D.
Minn. Aug. 28, 2014); *Nyhus v. City of Blaine*, Civ. No. 13-2878, 2014 WL 4348239,
at *2-3 (D. Minn. Sept. 2, 2014); *Heglund v. Aitkin Cnty.*, Civ. No. 14-296, 2014
WL 4414821, at *2-3 (D. Minn. Sept. 5, 2014); *Sherno v. Anoka Cnty.*, Civ.

(Footnote continued on next page)

subject to a four-year statute of limitations and that the clock begins running on the date when Plaintiff's records were accessed.  *See id.*  To the extent it is relevant here, the Court also adopts its analysis relating to futility as found in *Pinski v. City of Cottage Grove*, Civ. No. 14-325, 2014 WL 5810364, at *4 (D. Minn. Nov. 7, 2014).[5]

In this case, because Plaintiff filed her complaint on **November 7, 2014**, the statute of limitations bars claims regarding lookups occurring before **November 7, 2010**. As a result, Plaintiff's DPPA claims related to the following lookups that occurred before November 7, 2010, are time-barred and must be dismissed:

1.      Eleven Chisago County lookups made before November 7, 2010.

2.      One Isanti County lookup.

3.      Two Mille Lacs County lookups.

4.      Six Washington County lookups.

5.      One Hennepin County lookup.

---

(Footnote continued from previous page)
No. 14-982, 2014 WL 4670926, at *1 (D. Minn. Sept. 19, 2014); *Gavin v. Anoka Cnty.*, Civ. No. 14-615, 2014 WL 4722496, at *1 (D. Minn. September 22, 2014); *Jessen v. Blue Earth Cnty.*, Civ. No. 14-1065, 2014 WL 5106870, at *3-4 (D. Minn. Oct. 10, 2014); *Delaney v. Beltrami Cnty.*, Civ. No. 14-358, 2014 WL 5406884, at *5-6 (D. Minn. Oct. 21, 2014); *Taylor v. City of Amboy*, Civ. No. 14-722, 2014 WL 5438498, at *2 (D. Minn. Oct. 24, 2014); *Orduno v. Pietrzak*, Civ. No. 14-1393, 2014 WL 5464413, at *2 (D. Minn. Oct. 28, 2014); *Kampschroer v. Anoka Cnty.*, 57 F. Supp. 3d 1124, 1036-38 (D. Minn. 2014); *Krekelberg v. Anoka Cnty.*, Civ. No. 13-3562, 2014 WL 5810326, at *4 (D. Minn. Nov. 7, 2014); *Kolls v. City of Edina*, Civ. No. 14-370, 2014 WL 5810332, at *3 (D. Minn. Nov. 7, 2014); *Pinski v. City of Cottage Grove*, Civ. No. 14-325, 2014 WL 5810364, at *3 (D. Minn. Nov. 7, 2014); *Kennedy v. City of Braham*, Civ. No. 14-226, 2014 WL 7073322, at *14-17 (D. Minn. Dec. 12, 2014); and *Myers v. Aitkin Cnty.*, Civ. No. 14-473, 2014 WL 7399182, at *10 (D. Minn. Dec. 29, 2014).

[5]      Plaintiff makes no allegations that would support an argument for equitable tolling in this case.

6.      Twelve City of Brooklyn Park lookups made before November 7, 2010.

7.      One City of Chisago City lookup.

8.      One City of Forest Lake lookup.

9.      One City of Hastings lookup.

10.     Two City of Isanti lookups.

11.     Two Lakes Area Police Department lookups.

12.     Two City of Maplewood lookups.

13.     One City of Plymouth lookup.

14.     One City of Rice lookup.

(*See* Compl. Ex. A.)

In sum, all DPPA claims for data lookups done prior to November 7, 2010, are dismissed as time-barred.  As a result, only six lookups[6] by two entities remain.

## III.    The DPPA

In light of the Court's ruling on the statute of limitations, the remaining lookups in this case that support Plaintiff's DPPA claim are as follows:

| Entity Accessing Records | Date of Lookups Alleged |
|---|---|
| Chisago County | 11/9/2010 |
|  | 11/9/2010 |
|  | 11/9/2010 |
|  | 11/17/2010 |
| Brooklyn Park | 7/19/2012 |
|  | 7/19/2012 |
|  | **6 lookups** |

---

[6]     Although the Court need not decide the issue, the Court notes that three of the four Chisago County accesses were at the *exact* same time and therefore likely constitute a single access.

(*See id.*)

With respect to the remaining DPPA claim, the Court further incorporates its holdings and analysis in *Mallak* as they relate to DPPA claims.  *See Mallak*, 9 F. Supp. 3d at 1051-52, 1055-59.  Generally, to be liable under the DPPA, a defendant must knowingly obtain, disclose, or use personal information for a purpose other than one of the permissible purposes listed under Section 2721(b).  *See* 18 U.S.C. § 2724(a); *see also Mallak*, 9 F. Supp. 3d at 1051-52, 1055-56.  In *Mallak*, this Court further held that whether an individual "obtained" information involves a fact-specific analysis, but need not necessarily include physical possession, and that to state a claim under the DPPA, a plaintiff must allege that the information was obtained "for a purpose not permitted." *Mallak*, 9 F. Supp. 3d at 1055-57; *see also Nelson v. Jesson*, Civ. No. 13-340, 2013 WL 5888235, at *2 (D. Minn. Nov. 1, 2013) (holding that possession or acquisition of information need not be tangible and information may be "obtained" through viewing); *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1133 (D. Minn. 2013) ("The plain language of the [statute] . . . makes clear that the personal information must be knowingly obtained 'for a purpose not permitted.'").  Here, Plaintiff argues that she has adequately alleged the elements of a DPPA claim against each Defendant.  (*See generally* Doc. Nos. 33, 42.)

In light of the Court's analysis in *Mallak*, the Court must now examine the facts alleged in this case to determine whether Plaintiff has stated a plausible claim.  *See Roschen v. Wabasha Cnty.*, 29 F. Supp. 3d 1244, 1254 (D. Minn. 2014) (stating that in DPPA cases, the court must "attempt to discern cases which allege plausible claims from

cases where plaintiffs engage in farfetched speculation that does not rise to the level of plausibility"). The Court concludes that Plaintiff fails to state plausible claims for violations of the DPPA for the remaining lookups and that the claims fail to cross the requisite "line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Here, Plaintiff's primary allegations relate to two main issues: (1) lookups by Mr. Sapp's ex-girlfriend back in "the mid-2000's"; and (2) a single DNR lookup in 2009 after a Star Tribune article relating to Plaintiff and her siblings. (*See* Compl. ¶¶ 43-52, 53-57.) Plaintiff's allegations relating to Rivard and lookups and patterns surrounding those lookups might state plausible claims for lookups in the "mid-2000's"; however, Plaintiff completely fails to connect those allegations to any other lookups, particularly those that occurred within the applicable statute of limitations. The interaction with Rivard in no way explains to this Court anything about lookups that occurred in Chisago County in 2010 and, as a result, the Court is left with complete "speculation" on those claims. *See Roschen*, 29 F. Supp. 3d at 1254. The same is true of the Star Tribune article, for which there was only one associated lookup in 2009 and which is not asserted in this case. Thus, even considering the Rivard-related and Star Tribune-related lookups, Plaintiff still has not sufficiently alleged facts supporting a DPPA claim.

Further, this case is distinguishable from those cases in which this Court has determined that plaintiffs had sufficiently stated plausible claims that plaintiffs' records were not accessed for a permitted purpose. *See Mallak*, 9 F. Supp. 3d at 1057-59; *Pinksi*, 2014 WL 5810364, at *4-5; *Krekelberg*, 2014 WL 5810326, at *4-6. In these cases, the plaintiffs alleged some facts that supported an inference that the persons who accessed

their records were interested in them for a specific reason. *Mallak*, 9 F. Supp. 3d at 1057-59 (alleged that defendants were interested in plaintiff based on her role as an attorney and in the community, and where, as a result, most of the lookups of plaintiff were in the areas where she worked); *Pinksi*, 2014 WL 5810364, at *4-5 (alleged that the lookups primarily occurred in Cottage Grove where the plaintiffs worked and had extensive ties to the community); *Krekelberg*, 2014 WL 5810326, at *4-6 (alleged that plaintiff was well known across a number of Minnesota cities for her work and had frequent contact with law enforcement in that role, and was married to a police officer, which was discussed in the community). Here, Plaintiff's generalized allegations of ties to the law enforcement community lack the specificity found in the three cases above. Thus, as currently pled, Plaintiff's allegations in this case are nothing more than speculation that the lookups were improper based on the fact that she cannot articulate a reason that they were proper. This is not enough, as there is no link between the few facts alleged and DPPA violations. In sum, Plaintiff makes conclusory allegations that fall squarely within *Iqbal*'s admonishment that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To the extent Plaintiff alleges that the volume of lookups was high and that the lookups were made by name and not license plate number, as was the case in *Mallak*, *Pinksi*, and *Krekelberg*, this Court was clear that volume and lookup by plate number alone is not enough to state a claim. *See, e.g., Mallak*, 9 F. Supp. 3d at 1058 (stating that "access-volume alone is not enough"). Here, this is virtually all Plaintiff alleges, and it is

therefore not sufficient to state a claim.  Further, to the extent Plaintiff relies on the close timing between lookups relating to her information and her husband's information and on *Pinski*, her reliance fails.  Here, as noted above, those allegations might support claims for the lookups around the time that Rivard was impermissibly accessing data, but fail to support later lookups.  Thus, on the whole, Plaintiff's allegations do not rise to the level of sufficiently stating a DPPA claim.  Finally, like in *Kolls v. City of Edina*, Plaintiff essentially makes broad allegations of "strange patterns," but fails to point to specific facts that could support a reasonable inference that the lookups were made without a permissible purpose.  *See Kolls v. City of Edina*, Civ. No. 14-370, 2014 WL 5810332, at *5 (D. Minn. Nov. 7, 2014).

In sum, Plaintiff fails to state a claim for a DPPA violation against the remaining Defendants under Rule 12(b)(6).  All of Plaintiff's remaining DPPA claims must be dismissed.

## IV.    Commissioners

The arguments Plaintiff presents in this case with respect to the Commissioners are substantially similar to those presented in *Mallak*.  (*Compare* Compl. ¶¶ 169-230, 330-350; *and Mallak*, 9 F. Supp. 3d at 1050-51 (making substantially similar allegations relating to the Commissioners).)  As a result, the Court again concludes that all claims against the Commissioners must be dismissed in accordance with its analysis and holdings in *Mallak*, which it adopts herein.  *See Mallak*, 9 F. Supp. 3d at 1065-67.

Plaintiff asks the Court to "consider this case anew."  (Doc. No. 42 at 1.)  To that end, Plaintiff appears to add allegations relating to the Commissioners' knowing issuance

13

of passwords without first ascertaining a permissible purpose.  (*Id*. at 2 (citing Compl. at ¶¶ 173-74, 215-17, 317-19).)  Plaintiff asserts that these allegations relate to their "additional" theory of liability in this case, which asserts that the "Commissioners fail[ed] to ascertain any purpose for the individuals' obtainment of Plaintiff's information; rather they disclosed Plaintiff's information to individuals based solely on their status (i.e., being a police officer)."  (*Id*. at 25 (citing to allegations relating to deliberate indifference found in the complaint at ¶¶ 176, 290).)  The Court concludes that this theory and its associated allegations do not change the Court's analysis.  The Court has carefully considered Plaintiff's interpretation of *Kiminski* and federal appellate case law, and continues to find that Plaintiff has not sufficiently stated claims against the Commissioner Defendants.  Therefore, Plaintiff's claims against the Commissioners, and correspondingly against the DPS Does, are dismissed in their entirety.

## V.     Qualified Immunity and Severance

Because the Court has dismissed all of the claims, Defendants' requests for qualified immunity and severance are moot.

## CONCLUSION

In sum, a number of Plaintiff's claims are barred by the applicable four-year statute of limitations.  Further, Plaintiff fails to state a claim for a DPPA violation against any Defendant under Rule 12(b)(6), and all of Plaintiff's remaining DPPA claims must be dismissed.  The Court, however, dismisses the claims without prejudice.  Should Plaintiff choose to amend the Complaint, the Court reserves the right to award any attorney fees and costs associated with an amended complaint that fails to substantially and materially

address the deficiencies outlined by this Memorandum Opinion and Order.  The Court also cautions Plaintiff to ensure that she carefully considers any permissible reasons for law enforcement to be accessing her data, such as calls to the police reporting criminal activity, any known associations relating to criminal activity, or any other investigations relating to Plaintiff's personal circumstances in any way.

### ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The Motion to Dismiss and/or to Sever brought by Hennepin County (Doc. No. [15]) is **GRANTED**.

2.     The Motion to Dismiss, Motion to Sever brought by City of Brooklyn Park, City of Chisago City, City of Forest Lake, City of Hastings, City of Isanti, City of Maplewood, City of Plymouth, City of Rice, and Lakes Area Police Department (Doc. No. [21]) is **GRANTED**.

3.     The Motion to Dismiss, Motion to Sever brought by Chisago County, Isanti County, Mille Lacs County, and Washington County (Doc. No. [28]) is **GRANTED**.

4.     The Motion to Dismiss by Michael Campion and Ramona Dohman (Doc. No. [36]) is **GRANTED**.

5.      All claims against all Defendants in this matter are **DISMISSED**

**WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 18, 2015              s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge